The next matter, number 23-1332, Jonathan Martins v. Vermont Mutual Insurance Company. At this time, if counsel for the appellant would please introduce himself on the record. Good morning. May it please the Court, my name is Kevin McCuller and I represent the appellant, Jonathan Martins. If I may reserve two minutes, please, for rebuttal. Yes, you may. Thank you. Appellant seeks reversal of Chief Judge Saylor's order of dismissal entered on March 13, 2023 because the Court failed to recognize that a tort victim may have a contractual right as a third-party beneficiary against the tort thesis insurer, and that would be a direct cause of action. Judge Saylor's decision would require this Court to completely disregard the Massachusetts Supreme Judicial Court decision in the McGilloway matter. This legal theory admittedly was a seminal issue prior to four separate cases that were filed initially in the State Court seeking diminished value damages. All four cases worked their way up to the, I'm sorry, two of the cases worked their way up to the Massachusetts SJC, but they had all the same legal theories, and the results at the trial court level, both at the Federal Court, initially with Judge Saylor in this matter, and at the Superior Court with Judge Salinger, the Massachusetts Supreme Judicial Court, in essence, revived plaintiff's breach of contract action and remanded that case for further proceedings. And it's hard to imagine that the SJC would find, as a matter of law, again, for the first time, that diminished value damages are recoverable in Massachusetts in tort. They are covered by Part 4 of the 2008 Massachusetts Automobile Insurance Policy and revived that breach of contract claim and remanded for further proceedings if, in fact, there was no merit to that action. Interestingly enough, in the remand with the McGilloway case, Chief Judge Ricciuti at the Superior Court level ruled in opposite of Judge Saylor and found that the breach of contract claims do survive, despite the insurance company's motion for dismissal in that matter. So are you saying that in McGilloway, in addition to addressing the substantive issue of damages, the court implicitly overruled Rogin? Judge, I think that the court doesn't have to overrule Rogin because there are two different cases. Rogin is an equitable action to reach and apply following a default judgment. And in that case, there was a defect in service on the insured, on the tort visa. He had, in fact, moved from, I think, Massachusetts to Maryland, and he was served at last and usual, but that was not his place of residence. In Rogin, the plaintiffs, the injured party in that case, sought and received a default judgment based upon improper service. And the Rogin court emphasized in its holding that with the matter before it, you must have a valid judgment in order to proceed in a reach and apply action against the carrier. No one knew that that lawsuit existed. And again, more importantly, it was a reach and apply. The appellants here in this case don't run from the fact that we don't have a judgment. But that changes the analysis of what we're looking for and how we get there. Section 113, MGL Chapter 175, Section 113, is also a reach and apply action, similar to 214 that was sought and used with the Rogin case. Those are matters following a judgment to reach and apply to receive coverage. We're not looking to do that here, Judge. We're looking to move forward as an unnamed third-party beneficiary, as part of a contract between the insurance carrier and their policyholder. And what Judge Ricciuti stated in his decision, in his order, again, on the identical issue, is that that case in Section 113 doesn't apply. 112 applies. And nowhere within 112 does it state or require an actual judgment. And if I may, Section 113 is titled Judgment Satisfaction. That's not our case, Your Honor. Section 112, which is our case, is payment of losses. And that statute goes in to analyze the liability of an insurance company when an insurance carrier has accepted liability for the subject collision. That's what we're dealing with here. Vermont Mutual does not dispute the fact that their driver, that their insurer, was responsible for the collision. They do not dispute the fact that they paid, through subrogation, Mr. Martin's property damage claim in full, at 100 percent, and they paid his rental bill in full at 100 percent. Therefore, they don't dispute liability. It's only a question and a matter of quantifying and establishing the diminished value damages. That's why the plaintiffs, the appellants, rather, in this case, should be allowed to proceed, and why they were allowed to proceed in that McGilloway matter when it was remanded. But that distinction with Rogin, Judge, is critical, because we're not looking to go through the Rogin analysis and jump out when it's convenient. It's just simply not applicable for our case without that judgment. With no fight as to liability and no dispute as to liability, and the processing and handling of an insurance claim to now say, well, you have to get a judgment, that goes against what 112 stands for when insurance carriers evaluate claims. Well, isn't there a whole separate, there's the contractual common law theories, but then there's the statutory theory in Massachusetts of if liability is clear, you have to make good faith settlement offers, right? You do, yes. But that's a separate theory. With what Your Honor is asking me, absolutely. You can have a theory for good faith claim settling and good faith settlement practices, but what we're arguing here is that when the SJC decided the flattery case, one of the important provisions for purposes of analysis here was that it stated that clearly an unnamed third-party beneficiary has a right to pursue damages against the insurance agent in that situation. Let me ask you this. If the victim of a car accident could an ordinary course in Massachusetts just directly sue the insurer for breach of contract, why wouldn't we expect to see hundreds of those cases? In other words, it wouldn't be some odd thing that just exists implicitly in McGilloway. Because in practice, Your Honor, the insurance carriers, when they investigate, evaluate, and adjust claims, oftentimes there may be fights as far as liability and how a collision occurred or causation of an injury. Right, but there must be hundreds where there is not a big dispute about liability of the insured. And what I'm saying to the Court is not that the claims handling of Mr. Martin's claim here by Vermont Mutual is the common way that things are done, but it is a claim that Vermont Mutual does not dispute that liability, and they've processed and handled the majority of that claim, including the damages. And if I may, Liftschitz, which is one of the cases cited by the appellees here, there's an analysis within Liftschitz, which, by the way, was basically a Massachusetts resident involved in a collision with two New York defendants in New York, and liability in that case was disputed. It was a pro se litigant where how the accident happened was in dispute. But within that decision, the Court mentioned the Ramirez decision, Ramirez v. Commerce, which is an SJC case, where that's very similar to this case. Suppose there's a coverage defense. I'm sorry? Suppose the insurer doesn't dispute that the insured is liable, but claims that there's an exclusion that covers the accident. That was literally McGilloway before the SJC made its decision. And so you're saying in those cases Massachusetts law is that the victim can directly sue the insurance company and in that litigation resolve the coverage issue? Yes, because that's, in fact, what happened with McGilloway. The SJC decided, again, for the first time, that diminished value damages are a recognizable tort damage here in Massachusetts, and, in fact, diminished value damages are covered under Part 4 of the 2008 Mass Auto Policy. And if I may, the point that I was making with Ramirez in that it's similar. In that case, Ramirez sued Commerce when Commerce had already processed and paid its property damage claim, but in that situation, Ramirez had a total loss where his vehicle was paid for. And the dispute was sales tax. So similar to here with Martins, Vermont Mutual has paid the property damage claim, although it wasn't a total loss, it was repaired, and it's seeking payment of an additional component of property damage, which is what diminished value is. And in the context of this case and the claims handling and the lack of a dispute of liability, I would submit that the Flattery decision of the SJC, the McGilloway decision of the SJC, by reviving the breach of contract claim, remanding it for further proceedings, and the fact that there was no dispute as to liability of the underlying collision through Section 112, as articulated by Judge Ricciuti at the Superior Court, is the reason why this case should be remanded to the District Court for further proceedings as well. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the affilee will please introduce himself on the record to begin. Thank you. Good morning, Your Honors. Michael Batson for Vermont Mutual Insurance Company with me today as Michael Kenton. May it please the Court. I'd like to jump in to some of the things my brother said before I get into the main part of my argument. The Ramirez decision that my brother cited to was a 93A action and not a contract action, and so it has no application to this case. My brother cited to a decision by Judge Ricciuti in the State Court matters. That decision actually is not in any of the record materials that have been provided to this Court, but if Your Honors did read the decision in that matter, they would see, number one, that it was a judgment on the pleadings. So there was no discovery. There was no questioning of witnesses about liability. You had to accept the allegations of the complaint as having been true. And Judge Ricciuti actually explicitly stated in his decision that neither 112 nor 113 applied in that particular circumstance. One of the things that Judge Ricciuti did find in that decision was that the insurance companies hadn't disputed liability. Here, that's not the case. The answer to the complaint disputes liability. The testimony of witnesses disputes liability, certainly for IDV. Vermont Mutual has taken the position throughout this litigation that it is not responsible to pay IDV, that its insured would not be responsible to pay IDV. So the idea that we have gotten to this point and Vermont Mutual has never disputed liability is just not correct. Your Honor hit on an important question about whether or not a coverage dispute might satisfy that requirement, if it were even a requirement, which it's not. And I would suggest that it would. And it's not just the question of whether or not IDV is covered. It's not just about whether or not you can recover that in tort. It's any number of coverage disputes that could arise or any other disputes that might arise with respect to IDV. Are you saying your client still disputes that a tortfeasor could be liable to the victim for IDV? Not, no. McGilloway made clear that a tortfeasor can be liable for that. But McGilloway also makes clear that it is the plaintiff's burden to prove that it has actually or he has actually suffered IDV Well, that's true of all damages. Right. But that the accident in question caused it. That's true of all damages. Correct, Your Honor. I agree with that. So under Massachusetts law, IDV is basically like any other damage item. You have to prove liability, negligence, something like that. You have to prove the amount of the damages and you have to prove causation. Correct. Yes, Your Honor. I agree with that. And Vermont Mutual agrees with that. And in this case, that hasn't happened. In this case, we haven't had an adjudication of that issue. In this case, there has been no claim that's been brought against the insured. In this case, there has been no actual evidence submitted to the court that establishes that the plaintiff suffered IDV. There's no expert report. There's no report from a mechanic. There's no testimony from the witness himself that indicates that he suffered from IDV. All you have are allegations that have been made by plaintiffs. And at this point, after full discovery has been completed and closed for several years now, they still have not submitted to any court any actual admissible evidence that the vehicle in question had suffered IDV or that if it had suffered IDV, that it suffered IDV in an amount that would be required to be paid by the insured and thus Vermont Mutual. But what is important to understand, I think, and I believe some of your questions earlier alluded to this, is that Massachusetts has a very clear framework about how these types of actions are supposed to be handled. You have 93A and 176D, which place obligations on insurance companies to act reasonably with respect to not only their insureds but third parties. And where liability is reasonably clear, they're required to make reasonable settlement offers. If they do not do that, then third parties and their insureds may have the ability to bring claims directly under those statutes, directly against the insurance company. You don't need a judgment. You don't need a settlement. You can bring that and say the insurance company has not acted the way it should. And that encourages insurance companies to not force unnecessary litigation. The second part of that, though, is where you try and bring a breach of contract action. And that relies not only on the law of Massachusetts but on the policy language in question. And both here make clear that in order to bring a contract action, you have to have either a judgment or a settlement. The policy language, you don't even need to look at 112 and 113. The policy language itself talks about needing to have a judgment and a settlement. But even if it didn't and you look at 112 and 113 and what Rogin says and Lifshitz and other cases that refer to this statutory construction, which has been in place for at least 100 years in Massachusetts, that is that you need to have that judgment before you can exercise your rights as a third-party beneficiary against the insurance company. Until you have that, your rights are 93A and 17060. And in this case, at least for prima gala way conduct, plaintiffs dismiss those claims with prejudice. Why would anyone ever bring a breach of contract action given the availability of 93A? They don't need to. That's the whole point. They have their recourse. Their recourse is under 93A and 17060. The situation where you bring a direct action is where you get a judgment against an insured and the insurance company refuses to pay it for some reason, likely a coverage offense, whether it's because of a statement in an application, failure to pay premiums, any number of issues that could arise, but where the insurance company doesn't actually satisfy the judgment where there is coverage. That's where the third party then has rights to come against the insurance company without having to waste the time of the insured. And in their brief, Martins argues that somehow what Judge Saylor has done and what Vermont Mutual has advocated for leaves insureds in a position of not having coverage or they would leave them exposed to liability that McGilloway just resolved. And again, that's just not true. If claims were brought against our insured, Vermont Mutual would provide the coverage that is afforded under the policy. And if there is coverage for that, which would have to exist in order for a breach of contract action to succeed in the first instance, then Vermont Mutual is going to indemnify the insured and defend the insured. And at that point in time, Vermont Mutual, if it doesn't do that, would potentially be liable again under 93A or 17060. Mr. McCullough said that we should read the SJC decision as effectively blessing precisely the type of case he wants to bring here. In other words, he says that was a case in which the victim directly sued the insured's carrier. So in the McGilloway case, my recollection is that the procedural posture of that case was different than here. Here we have summary judgment where a discovery has happened. We've gone through and you can look and see whether or not they can actually submit evidence to prove a breach of contract. There, the court was dealing simply with the legal question of whether or not it was recoverable in court and whether it was covered under the policy. The court did not get into whether or not a breach of contract claim could be successful. It did not look at the merits of the breach of contract claim. Nobody briefed the issue of whether or not a breach of contract claim could even be brought like is the issue here. The issue was, is it recoverable in court and is it covered under the policy if it is recoverable? And the court said that it was and remanded for further consideration. And this court, after McGilloway was issued, then remanded for Judge Saylor to further consider all of the issues that had been briefed the first time around when summary judgment was moved forward, I think it was 2019. And this is an issue that Vermont Mutual has been raising since the beginning. Vermont Mutual has always argued that they need to actually bring a 93A claim, but you have to first get a judgment or reach a settlement before you can bring a breach of contract claim. And so that has always been an issue, at least in this case. I'm not sure that it was an issue in that case, but the court certainly did not come out, the SJC did not come out and say that in deciding the way we are, we're going to create this right. And this court, dealing with the 2016 version of the policy, which now includes a specific exclusion for diminished value, recognized that the statutory and regulatory schemes in Massachusetts do not explicitly provide for IDV damages. That that's left up to the commissioner who is charged with drafting the standard policy. And the SJC interpreted that policy to include coverage for diminished value. At this time, the commissioner has never created a direct right of action, and the court did not take that additional step in deciding McGilloway. But the statutory and regulatory scheme made clear that the legislature has never changed 112 and 113 to allow the type of action that Mr. Martins wants to bring. Rogan has never been overturned. Rogan is still good law. If you look at it on Westlaw, it doesn't have any little colorful flags next to it. It's still the law. It is still cited as Judge Saylor recognized. And the decisions that are cited by Mr. Martins, such as flattery, do not say what appellant would like for them to say. And I notice my time is done, and I'm happy to answer any other questions that Your Honor may have. I think we're all set. Thank you. Great. Thank you, Your Honor. Thank you. Thank you, counsel. At this time, if counsel for the appellant would reintroduce himself on the record to begin, he has a two-minute rebuttal. Thank you. For purposes of the record, Attorney Kevin McCullough for the appellant. Your Honors, the question posed to Brother Counsel about liability and whether or not it's in dispute, the appellant wants to say that everything's in dispute to try to help that argument and refute the argument that if things aren't in dispute, then we can move forward pursuant to the remand for McGillow 8 and 112 as articulated by Judge Raschutte. This is a rear-end collision, and Vermont Mutual has paid 100 percent of the property damage claim submitted by Mr. Martins and 100 percent of the rental damage claim submitted by Mr. Martins. I would submit to this court that there is no liability issue. There may be a fight as to the value of the diminished value damages, as was stated within the McGillow 8 court in the analysis when they remanded the case to say that, you know, it's just not open game here. It's you have to articulate and prove your damages as you do in every tort case here in Massachusetts. Is there any evidence in the record as to the value of the existence or value of the ID damages? There is, Your Honor. There is. And in fact, through testimony from the claims adjusters throughout the litigation and discovery of this case, that they also have worksheets to quantify and evaluate diminished value damages. So there are several parts of the record in this case directed towards diminished value damages, what the damages are, the value of those damages. And that was flushed out prior to the McGillow 8 decision going to the SJC. And to be clear, I don't want it to seem that McGillow 8 was filed and somehow it leapfrogged up to the SJC. There was more discovery for a longer period conducted. McGillow 8 and Ercolini were consolidated to keep things clean and together. And there was over two and a half years of discovery in those cases as well where all of these issues were fought with a focus on the discovery was focused on the legal issue, whether or not diminished value was covered under Part 4. Is the underlying dispute here a coverage issue, in other words? It's not. It seems to me there's agreement between the parties that a tortfeasor is liable for these type of damages. I would submit that that should be crystal clear following the McGillow 8 decision by the SJC. And so that would leave the only issue as whether a particular policy covers those damages or not? Correct. And the 2008 policy Part 4 does cover that. Is that the dispute in this case, that single issue? It was summarized very well by Judge Ricciuti when he said the only thing left to decide here is the quantum of damages. Well, no, isn't there a claim that the insurance policy doesn't cover these damages? I don't believe so, Your Honor. So, in other words, the only issue is the dispute? The amount of the diminished value damages is the only dispute. And I don't want to take up too much more time, Judge, but that's my position in why the case was revived and remanded by the SJC. The SJC could have done the same analysis on that legal issue, on that legal theory, and held that the plaintiffs had no breach of contract action, which is what's being argued by my brother here today. But they revived that and remanded it before the proceedings. Any questions? No. Thank you. Thank you very much, Your Honor. Thank you, Mr. Clark. Thank you, counsel. That concludes argument in this case.